# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **Brian Keith Redding** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:18cv589 (LMB/TCB) |
| | ) | |
| **Barbara Meade, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Brian Redding ("Redding" or "plaintiff"), a Virginia inmate who suffers from gastrointestinal problems, specifically, Crohn's disease and ulcerative colitis, has filed a civil rights action under 42 U.S.C. § 1983, claiming that Rappahannock Regional Jail ("RRJ") nurse Barbara Meade ("Meade" or "defendant") provided constitutionally deficient medical care in violation of the Eighth Amendment.[1] [Dkt. No. 1]. Meade has filed a motion for summary judgment, supported by a legal memorandum and exhibits. [Dkt. Nos. 34–35]. Redding received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed an opposition to Meade's motion. [Dkt. Nos. 36, 39]. For the reasons that follow, Meade's motion for summary judgment will be granted.

---

[1] Plaintiff also named as defendants Jennifer Shearer, a second RRJ nurse, and Phil Grimes, the superintendent of RRJ. Both defendants were dismissed from this action because Redding did not allege sufficient conduct on their part to establish constitutional liability. [Dkt. No. 29].

## I. Background

The facts described below document Redding's medical treatment for his gastrointestinal conditions described at different times as Crone's disease or colitis, from the time he entered RRJ in September 2016, until he filed this § 1983 action.[2]

When Redding entered RRJ he reported that he suffered from Crohn's disease. [Meade Aff. Attach. A]. Nurse Meade avers that to address these symptoms she placed Redding on a high-protein, high-fiber, low-fat, low-carbohydrate diet on November 21, 2016. [Meade Aff. ¶ 9 & Attach. C]. The diet also excluded beans, nuts, and soy. [Id.]. A month later, on December 27, Redding requested a renal diet instead.[3] [Meade Aff. ¶ 11 & Attach. D]. Meade explained to Redding that a renal diet was not medically indicated for Crohn's disease, nor had it been ordered by an RRJ physician. [Meade Aff. ¶ 12 & Attach D]. Redding continued to request a diet change throughout January 2017, asking specifically for a high-fiber renal diet with milk or shakes, no nuts, soy, or beans, and a "snack bag" at night. [Meade Aff. Attach. F, G, H]. Meade responded that he was already on a high-fiber diet without nuts, soy, or beans and that he should not drink milk because it is contraindicated for Crohn's disease. [Meade Aff. ¶ 14 & Attach. F, G, H].

---

[2] The facts in this section were extracted from Meade's sworn affidavit and accompanying attachments [Dkt. No. 35], which include plaintiff's medical records, his grievances, and responses to those grievances. Although Redding filed a motion opposing summary judgment, it is unverified and unsupported by statements that were sworn or made under penalty of perjury. [Dkt. No. 39]. The complaint also is unverified. [Dkt. No. 1]. The Court will not consider Redding's version of the facts as set out in his pleadings because they are unverified and they do not create a material dispute of the facts which would preclude granting defendant summary judgment. See Fed. R. Civ. P. 56(e); United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 316–17 (3d Cir. 2019); Turner v. Human Genome Science, Inc., 292 F. Supp. 2d 738, 743 (D. Md. 2003).

[3] A renal diet limits protein, phosphorous, sodium, and potassium, and is prescribed for persons with kidney disease. [Meade Aff. ¶ 13 & Attach. E].

RRJ Physician Assistant (PA) Joshua Sung examined Redding on January 27, 2017, and was aware of plaintiff's history of both Crohn's disease and ulcerative colitis. [Meade Attach. I]. At the appointment Meade requested a renal diet and, according to Sung, "insist[ed] on receiving milk as well which is contraindicated in these disease process[es]." [Id.]. Nevertheless, Sung ordered Redding's requested diet—renal with milk and a snack bag but no peanut butter, cheese, beans, nuts or soy—"as an alternative solution to Mr. Redding's symptoms," based on Redding's insistence. [Meade Aff. ¶¶ 17–18 & Attach. C, I]. Sung agreed to monitor how plaintiff responded to the new diet. [Id.].

Redding reported a flare-up of his Crohn's disease symptoms throughout April 2017 and asked to see a specialist. [Meade Aff. ¶ 19 & Attach. J, K]. In particular, he explained that he was passing blood when going to the bathroom, two to three times an hour, and lost 15 pounds over the course of 2 weeks. [Meade Aff. Attach. J, K]. Meade switched plaintiff's diet on May 12 to a "miscellaneous diet" that prohibited nuts, beans, and cheese. [Meade Aff. ¶ 22 & Attach. C, L]. Redding asked to be placed on the renal diet the following week on May 20. [Meade Aff. Attach. M]. Meade denied this request—and his continued requests for a renal diet—because the diet was not medically indicated. [Meade Aff. ¶¶ 24–28 & Attach. M, N, O]. Moreover, she avers, a registered dietician (RD) confirmed that a renal diet was not medically indicated. [Meade Aff. ¶ 26 & Attach. N].

On August 23, 2017, Redding was taken to Associates in Gastroenterology, where he was examined by Dr. Benjamin Young who ordered a colonoscopy, CT scan, and labs, but determined that Redding did not need a restricted diet and could "resume normal diet." [Meade Aff. Attach. S]. Redding requested a new diet again on September 28, this time, a high-protein, high-calorie diet with milk and a snack bag but no beans. [Meade Aff. Attach. T]. Meade reminded Redding that the doctor had instructed him to continue his current diet, adding that she

3

would not change his diet until his upcoming test results came in. [Meade Aff. ¶¶ 35–36 & Attach. T].

Dr. Young performed a colonoscopy on October 13, 2017. [Meade Aff. Attach. U]. Afterwards, the doctor did not recommend altering Redding's diet, instead directing that Redding be maintained on the status quo. [Id.]. The next day, Redding reported that he had experienced "serious weight loss" and asked for one of two special diets: either (a) a high-protein, high-calorie diet with milk or shakes and no beans; or (b) a renal diet with real meat, milk, a snack, and no beans. [Meade Aff. ¶ 39 & Attach. V]. Meade responded that plaintiff's weight was being monitored weekly and told him to continue taking the medication that Dr. Young prescribed. [Id.]. At the time, Redding's weight of 140 lbs. and height of 5' 6" corresponded to a body mass index (BMI) within the normal, "healthy" range. [Meade Aff. ¶¶ 41–42 & Attach. W]. In fact, the medical records show that Redding's BMI never fell below the normal range during his incarceration at RRJ, even when his weight dropped to 130 lbs. [Meade Aff. ¶ 42 & Attach. W].

Redding returned to Associates in Gastroenterology on October 25, 2017, where Dr. Kenneth Josovitz prescribed an unrestricted, high-calorie, high-protein diet. [Meade Aff. ¶ 44 & Attach. X]. Later that day Redding submitted a request for a high-calorie, high-protein diet that excluded beans and to be supplemented with a snack bag and a shake or milk, adding that Dr. Josovitz recommended that diet. [Meade Aff. ¶ 44 & Attach. Y]. Meade denied that request to the extent that Redding was asking for milk and, instead, implemented Dr. Josovitz's prescribed diet. [Meade Aff. ¶ 46 & Attach. C, Y].

Redding was admitted to the hospital on November 3, 2017, because he continued to experience abdominal pain and bloody diarrhea. [Meade Aff. ¶ 48 & Attach. AA]. The examining gastroenterologists determined that Redding's abdominal pain likely was caused by a

4

flare-up of ulcerative colitis but did not recommend changing his diet. [Meade Aff. ¶¶ 49, 52 & Attach. AA, BB].

On November 7 Redding was discharged from the hospital. The discharge papers showed that he was in stable condition and "tolerating a regular diet;" however, a registered dietician ("RD") at the hospital recommended that Redding be given a high-calorie, high-protein diet with double portions of real meat, no beans, no corn, a protein shake and milk with each meal, and a nightly snack. [Meade Aff. Attach. AA]. The RD later told Meade that Redding had asked her to prescribe "double portions of real meat." [Meade Aff. ¶ 51]. On his discharge date, Kristin Clark, a PA for Dr. Young, who had examined Redding at the hospital, sent a letter to RRJ medical staff requesting that Redding have a diet consisting of "double portion renal x2 no beans with shake each meal and snack bag OR real meat double portion no beans with shake each meal plus snack bag." [Meade Aff. Attach. BB, CC]. Meade avers that RRJ nurse Jennifer Shearer contacted Clark to clarify the diet order because the office had never before prescribed a renal diet for Redding. [Meade Aff. ¶ 54]. Like the hospital dietician, Clark explained to Shearer that she drafted the letter because "Mr. Redding had written her a three-page letter persuading her to notify RRJ medical staff and alter his diet." [Meade Aff. ¶ 55 & Attach. DD]. Clark elaborated, "I guess he is looking for more protein and he wants more food. There is no medical reason why he should be on a Renal Diet." [Id.]. Because there was no reason to provide Redding with a renal diet, Meade maintained him on his current unrestricted high-calorie, high-protein diet. [Meade Aff. ¶ 56 & Attach. DD, EE].

The day after he was discharged from the hospital, Redding inquired why he had not yet received prescribed medication. [Meade Aff. Attach. EE]. Meade replied that the jail had received the prescription after it could no longer request same-day delivery from its off-site pharmacy. [Meade Aff. ¶ 58 & Attach. EE]. There is no other allegation by plaintiff that any of

5

his prescriptions were not timely supplied and no evidence of Meade having caused this one-time delay.

During a follow-up appointment at Associates in Gastroenterology on January 25, 2018, Dr. Ali Kazemi noted that Redding appeared "well nourished" and had denied any "unusual change in weight." [Meade Aff. Attach. GG]. Another doctor reported similar findings at a follow-up appointment on March 8. [Meade Aff. Attach. KK].

The medical records show that Redding weighed 147 pounds on September 4, 2016 when he first entered RRJ. [Meade Aff. Attach. W]. From that date until July 4, 2018 his weight fluctuated mostly in the 140's range, reaching as much as 159 pounds on March 25, 2017 and a low point of 130 pounds on May 22, 2018 and July 4, 2018, contradicting plaintiff's claim that he lost an enormous amount of weight due to defendant's unconstitutional behavior. [Meade Aff. ¶ 40 & Attach. W].

Redding filed this civil action in May 2018, claiming that nurses Meade and Shearer as well as the jail's superintendent acted with deliberate indifference to his serious medical needs. [Dkt. No. 1]. He principally alleges that Meade terminated his specialist-ordered diets "for no reason at all." [Id.]. As a result, he alleges, he passed "a lot of blood in a runny stool daily" and lost an "enormous amount of weight" [Id.].

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. Analysis

Nurse Meade has moved for summary judgment contending that she is entitled to judgment as a matter of law on Redding's Eighth Amendment claim. To show deliberate indifference to a serious medical need, Redding must demonstrate that Meade knew about his serious medical need yet "disregarded that need and the substantial risk it posed." See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).

Meade does not dispute that Redding suffers from a serious medical condition, but contends that the undisputed record demonstrates that her decisions to deny Redding his requests for a renal diet and for milk were medically appropriate, and did not amount to deliberate indifference. She further argues that she adequately managed Redding's care, for example, by altering his diet to alleviate Crohn's disease symptoms and referring him to outside physicians on multiple occasions.

On this record no reasonable factfinder could conclude that Meade acted with deliberate indifference to Redding's serious medical needs. The Eighth Amendment requires prisons to provide inmates with medically necessary diets. Scinto v. Stansberry, 841 F.3d 219, 233 (4th Cir. 2016). And Meade, in fact, provided Redding with several diets to address his gastrointestinal disorders—just not the one he wanted. "Disagreements between an inmate and a physician over the inmate's proper medical care," as is the case here, "do not state a § 1983 claim" absent exceptional circumstances, of which there are none in this case. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). For instance, although Redding insists that the high-protein, high-calorie food trays provided at RRJ supplied "far from what my body needed intake wise [sic]," resulting in his losing around 30 pounds in a couple months, that bald assertion is contradicted by the medical record. [Dkt. No. 39, Redding Mot. Opposing Summary J., at 2, 5]. As the record shows, although Redding lost weight, he maintained a normal BMI, and never lost 30 pounds.

7

Moreover, contrary to Redding's allegation, the evidence does not establish that "Nurse Meade has done nothing but block any treatment or orders provided by the specialists." [Dkt. No. 1, Pl. Compl.]. Meade followed the dietary instructions provided by Redding's medical doctors—the gastroenterologists. The only medical advice she disregarded were the diet orders provided by the outside PA and RD, and, even then, only after they admitted that they wrote those orders because Redding asked them to, not because they were medically indicated. See Starling v. United States, 664 F. Supp. 2d 558, 569–70 (D. S.C. 2009) (concluding that prison doctor was not liable under Eighth Amendment for disregarding specialist's recommendations). Nor does the evidence demonstrate that Meade withheld prescribed medication. At most, the medical record shows that, one time, Redding's receipt of steroids was delayed because the prescription was received after the time had expired to order medication for same-day delivery. There is no evidence in the record indicating that Meade was responsible for the delay or that the delay caused plaintiff any medical problems. All told, no factfinder could conclude that Meade's treatment decisions caused Redding "unnecessary and wanton infliction of pain." See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Accordingly, defendant Barbara Meade's Motion for Summary Judgment will be granted and plaintiff's motion opposing summary judgment will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 21st day of January, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge